GULOTTA, Judge.
Plaintiff, a judgment creditor, pursuant to a writ of fieri facias, seized two automobiles owned by the judgment debtor, Lawrence Monroe (now deceased) and his surviving spouse. The judgment upon which the seizure was based was rendered in August, 1969, and the seizure was made at the home of the intervenor, Dr. Norman S. Hunt, on April 9, 1974. Intervenor, an alleged creditor of the surviving spouse,[1] claimed a preference on the automobiles by virtue of a pledge of the vehicles executed on March 1, 1974. The answer to the intervention claimed that the pledge was a fraudulent conveyance, executed to defraud the judgment creditor. Although personal notice of service of a trial date was made on the attorney for intervenor, Dr. Hunt made no appearance. At the hearing, a judgment was rendered dismissing the intervention and ordering ■ that the recorded pledge bearing against the vehicles be erased and cancelled and further directing the proceeds of the sale be paid to plaintiff. From this judgment intervenor appeals.
Intervenor, inter alia, claims that the judgment creditor, plaintiff herein, acquires no lien by merely obtaining a judgment and recording it, or taking out a writ of fieri facias, but that the lien and privilege is acquired by the act of seizure. According to intervenor, the pledge predated the seizure and in such instance the lien and privilege asserted by the judgment creditor is ineffective against such pledged property.
Plaintiff, on the other hand, disputes the validity of the purported pledge because, according to plaintiff, it was executed in an attempt to defraud him of his rights as a judgment creditor. Plaintiff claims that under the authority of LSA-R.C.C. arts. 1970 through 1994 (Revocatory Action) the pledge should be declared null and void. While the instant matter is not styled as a revocatory action, plaintiff’s defense to the intervention is in the nature *153 of a revocatory action. Additionally, plaintiff claims that if the pledge is not fraudulent, it is, nevertheless, invalid since, by its terms, it does not specify the amount of the debt intended to be secured as required by LSA-R.C.C. art. 3158.
With respect to plaintiff’s claim that the pledge is fraudulent, intervenor, in oral argument, takes the position that since plaintiff seeks to have the pledge declared fraudulent and null pursuant to the articles of the Civil Code providing for a revocato-ry action, the court should apply LSA-R. C.C. art. 1994 and find that plaintiff’s defense is barred. LSA-R.C.C. art. 1994 states:
“The action given by this section, is limited to one year; if brought by the creditor individually, to be counted from the time he has obtained judgment against the debtor; if brought by synd-ics or other representatives of the creditors collectively, to be counted from the day of their appointment.”
Intervenor claims that in accordance with the foregoing codal provision since plaintiff failed to execute on the judgment against the judgment debtor within one year from the time the judgment was obtained, any action to set aside a pledge of the debtor’s property to a third party is prescribed within one year from the date that the judgment was obtained.
We reject intervenor’s claim that the prescriptive period set forth in LSA-R.C.C. art. 1994 applies to the instant case. In Youngblood v. Burke, 43 So.2d 695 (La.App., 2d Cir. 1950), the court held that Codal provision 1994 does not apply to a situation, as in the instant case, where the allegedly fraudulent contract was executed more than one year after the judgment creditor had obtained his judgment.
In Youngblood, the court, in applying LSA-R.C.C. art. 1994, stated:
“In writing Article 1994, the framers of the Code evidently had in mind; primarily, cases in which the contract of the judgment debtor under attack would be one made prior to the obtaining of a judgment by the individual creditor or prior to the appointment of a syndic or other representative of the creditors collectively and the prescription therein provided. In cases where the judgment creditor obtained his judgment more than a year prior to the debtor’s execution of the allegedly fraudulent contract, the beginning of the prescriptive period must necessarily be placed at the time when the contract came into existence or the time when the judgment creditor first became aware of the existence or execution of the allegedly fraudulent contract. This results in the application of the usual rule relative to prescriptive rights, namely, that prescription does not run against one who has no knowledge of the existence of his rights (except in cases involving real estate where recor-dation creates a presumption of knowledge.) * * * Applying the rule that all articles of the Code must be read and applied in conjunction with each other, and in order to give a reasonable meaning and a sensible interpretation, it follows that Article 1994 constitutes no bar to appellants’ contention, as it must be interpreted to mean — in cases not involving real estate, where the judgment creditor has obtained judgment prior to the execution of the allegedly fraudulent contract — that the prescriptive period cannot begin to run prior to the existence of the contract, which is the subject of attack in the suit to which prescription is pleaded, and in cases involving personal contracts the prescriptive period does not begin until the time when the judgment creditor has actual knowledge of the existence or execution of the contract or the circumstances are such that he should be equitably charged with such knowledge.”
Following the rationale in Youngblood, we conclude that the prescription of one year provided for in LSA-R.C.C. art. 1994 has *154 not run since the pledge was executed on March 1, 1974, and the answer filed by-plaintiff to the intervention seeking to have the pledge declared fraudulent was filed on June S, 1974.
We affirm the finding of the trial judge that the pledge was invalid. Plaintiff reduced his claim against Lawrence Monroe to judgment in August, 1969. After Monroe died, in January of 1974, plaintiff attempted seizure through a writ of fieri facias of several automobiles owned by the Monroes. A deputy sheriff testified that on February 13, 1974, he went to the Monroe home and found only one of the seized automobiles. After much pleading by Mrs. Monroe and after realizing that the serial number on the writ of seizure and the serial number on the car did not correspond, the deputy did not effect seizure. The other vehicles to be seized were not present at the Monroe house at that time. An attorney for Associates Discount testified that he verbally informed Mrs. Monroe in late January or early February, 1974, that Associates would effect seizure on the three vehicles. After numerous attempts to effect seizure, plaintiff, on Mar.ch 1, 1974, filed a rule against Mrs. Monroe seeking to have the debtor disclose the whereabouts of the vehicles. On March 1, 1974, Mrs. Monroe executed the pledge. These circumstances strongly indicate that Mrs. Monroe was deliberately concealing the cars from the creditor and did execute the pledge in an attempt to place the vehicles beyond the reach of the judgment creditor.
Since we conclude that the pledge was executed in an attempt to defraud the creditor, we find it unnecessary to consider whether the pledge was regular on its face and effective against third parties under LSA-R.C.C. art. 3158.
Accordingly, the judgment appealed from is affirmed.
Affirmed.

. Intervenor claims the pledge was executed in payment of a pre-existing debt incurred by the surviving spouse for funeral expenses of her deceased husband and for living expenses incurred for herself and her child.